UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

MARYAM AYAZI,                                    :

                              Plaintiff,         :

              v.                                 :

NEW YORK CITY DEPARTMENT OF                      :
EDUCATION,                                       :

                              Defendant.         :
                                                 :
-----------------------------------------------------------------x

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 28 2012 ★
BROOKLYN OFFICE

**MEMORANDUM & ORDER**
08-CV-2456 (MKB)

MARGO K. BRODIE, United States District Judge:

Plaintiff Maryam Ayazi, proceeding *pro se*, brings the above-captioned action against

Defendant New York City Department of Education alleging violations of the Americans with

Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Due Process Clause of the Fourteenth

Amendment via 42 U.S.C. § 1983, New York State Human Rights Law ("NYSHRL") and New

York City Human Rights Law ("NYCHRL").  Plaintiff, a former teacher who contracted polio as

a child and suffers from the effects of the disease, previously filed a complaint in this Court in

1998, *Ayazi v. N.Y.C. Bd. of Educ.*, 98-CV-7461 ("*Ayazi I*"), in which she alleged violations of

the ADA and the Due Process Clause.  Judge Garaufis[1] originally dismissed the *Ayazi I*

complaint in 2006, but the Court of Appeals for the Second Circuit reversed and the case was

reopened in 2009.[2]  Prior to the reopening of *Ayazi I*, Plaintiff filed the above-captioned action

("*Ayazi II*") bringing substantially similar allegations to *Ayazi I*.  Defendant moved to dismiss,

---

[1] This action was reassigned to the undersigned on March 23, 2012.

[2] A jury trial was held in *Ayazi I*, and the jury rendered a verdict for Defendant on all
claims.

arguing that Plaintiff's claims were barred by the statute of limitations and the doctrine of

collateral estoppel.  On February 8, 2011, Judge Garaufis dismissed the Complaint but granted

Plaintiff 30 days to amend as to certain claims.  (Feb. 8, 2011 Memorandum & Order ("February

2011 Order") 23–24.)  Plaintiff timely filed the Amended Complaint.  In the Amended

Complaint, Plaintiff alleges that Defendant violated the ADA by denying Plaintiff a reasonable

accommodation and that the denial of a reasonable accommodation was retaliatory; that

Defendant violated the ADA and the Due Process Clause by placing adverse notations in

Plaintiff's records, thereby invalidating her teaching license; and that Defendant, with retaliatory

motive, refused to interview or hire Plaintiff.[3]  Defendant then moved to dismiss the Amended

Complaint.  The Court heard argument on May 31, 2012.  For the reasons set forth below,

Defendant's motion to dismiss is granted.

## I.   Background

The facts alleged in the Amended Complaint are assumed to be true for the purposes of

this motion.  Plaintiff has Post-Polio Syndrome, which results in mobility impairment and

stamina and endurance limitations.  (Am. Compl. ¶ 5.)  Plaintiff was an employee of the New

York City public schools from May 3, 1996 to June 26, 2001.  *Id.* at ¶ 17.  In 1996, Plaintiff was

issued a City Certificate to teach as a substitute teacher in English as a Second Language

---

[3] Plaintiff did not remove the previously-dismissed claims from her Amended Complaint. At the November 29, 2011 pre-motion conference, Judge Garaufis ordered that any claims in Plaintiff's Amended Complaint that were previously dismissed in the February 2011 Order "are again dismissed as law of the case." (Nov. 29, 2011, Minute Entry.)  Accordingly, the following claims are dismissed: (1) Defendant canceled Plaintiff's licenses in violation of the ADA and the Due Process Clause; (2) Defendant failed to provide reasonable accommodations to Plaintiff, when she was at Grover Cleveland; (3) Defendant discriminated and/or retaliated against Plaintiff while she was at Grover Cleveland because she attempted to obtain a reasonable accommodation; and (4) Defendant discriminated and/or retaliated against Plaintiff by terminating her licenses and certificates, failing to reinstate her after administratively reviewing her dismissal, placing a "R" notation on Plaintiff's medical records and requiring her to undergo a medical examination." (February 2011 Order 18–22.)

("ESL") in Secondary Schools ("License 559B/81"). *Id.* at ¶ 20. Plaintiff then received a Conditional ESL Regular License for Appointment ("License 559B/TT") on April 18, 1996. *Id.* at ¶ 23. That license was made effective for eight months, expiring January 31, 1997. *Id.* On September 3, 1996, Plaintiff was appointed to teach ESL at Franklin K. Lane High School in Queens under License 559B/TT. *Id.* at ¶ 27. Plaintiff formally requested an accommodation on October 16, 1996. *Id.* at ¶ 33. Such requests were not supposed to be entered in Defendant's database, but Plaintiff's accommodation request was entered onto her medical screen. *Id.* at ¶¶ 34–35. On January 31, 1997, Plaintiff's License 559B/TT was not renewed, against school policy, because her medical exam had not been satisfactory. *Id.* at ¶ 39. Plaintiff was not informed that her license had not been renewed. *Id.* On February 3, 1997, Plaintiff was transferred to Grover Cleveland High School. *Id.* at ¶ 41. Plaintiff's service was terminated effective June 26, 1997. *Id.* at ¶ 43. Plaintiff was informed that she was terminated for poor performance. *Id.* Plaintiff filed an EEOC charge the next day. *Id.*

Around the time that Plaintiff was terminated, Defendant placed the notation "DPD" into the database on each of Plaintiff's license screens. *Id.* at ¶¶ 46–46(a), 46(c). "DPD" stands for "Probationary Discontinuance." *Id.* at ¶ 46(a). This notation misrepresented that Plaintiff had a discontinuance of service under each of her licenses and prevented her from getting hired. *Id.* at ¶ 46. Plaintiff does not know when DPD was placed on her license screen because she was not provided with the license screens until 2005. *Id.* at ¶ 46(b). Defendant also placed a "U" for "unsatisfactory" on Plaintiff's license screen. *Id.* at ¶ 46(e).

On June 8, 1998, Plaintiff commenced an Article 78 proceeding in New York State Supreme Court, Kings County, where she challenged her discontinuance and the subsequent review process. *Id.* at ¶ 51(b). That same month Plaintiff was told that her substitute certificate

was going to be cancelled due to allegations from her former principal at Grover Cleveland High School. *Id.* at ¶ 52. On June 24, 1998, her substitute certificate was cancelled. *Id.* at ¶ 53. Plaintiff was re-issued her certificate to teach art on August 13, 1998. *Id.* at ¶ 53(a). Plaintiff then met with Zenaida Tejada, Director of the Office of Staffing Services for Defendant, and asked Tejada to refer Plaintiff to a vacant position under that certificate. *Id.* at ¶ 53(b). Tejada verbally told Plaintiff that the certificate had been cancelled. *Id.*

In June 1998, Plaintiff was working two nights a week as a per-session teacher at Defendant's Flushing Evening High School in Queens and occasionally as a per-session teacher in the Office of Adult and Continuing Education ("OACE"). *Id.* at ¶ 54(b). On June 4, 1998, Plaintiff filed an accommodation request with Defendant's medical bureau. *Id.* at ¶ 54(a). On September 14, 1998, Plaintiff was hired to teach ESL to beginning level adults two nights a week at Defendant's High School of Fashion Industries. *Id.* at ¶¶ 54(h)–(i). Plaintiff was informed that same day that her request for an accommodation would be reviewed, if she was able to find employment within a district in her license area at an elementary or intermediate school. *Id.* at ¶ 54(j). As a result of her accommodation request, Defendant terminated all of Plaintiff's licenses that had been reissued. *Id.* at ¶ 55.

On December 1, 1998, Plaintiff filed the *Ayazi I* complaint alleging that Defendant, then the New York City Board of Education, had discriminated and retaliated against her in violation of the ADA and the Due Process Clause. *Id.* at ¶ 55(a). One month later, Plaintiff passed the oral examination required to receive a regular city license for appointment to teach art, but Plaintiff was told by Steven Catalano, Chief Administrator, that her license could not be processed and was advised to appeal. *Id.* at ¶¶ 55(b)–(d). Plaintiff appealed to the Officer of Personal Investigation, but the office never responded. *Id.* at ¶ 55(f). In April 1999, Defendant

conducted a medical exam of Plaintiff. *Id.* at ¶ 56. Although Plaintiff passed the medical exam, Defendant failed to put the appropriate notation on her license, as required to make the license valid. *Id.* Lawrence E. Becker, the Chief Administrator of Defendant's Medical Bureau, told Plaintiff that the medical evaluation was related to Plaintiff's June 1998 accommodation request. *Id.* at ¶ 56(c). After the medical evaluation, Defendant's doctor recommended that Plaintiff receive an accommodation. *Id.* at ¶ 56(f). However, Defendant denied Plaintiff an accommodation because Adult Education teaching was not considered a "regular job." *Id.* at ¶ 56(g).

Plaintiff filed a complaint with the Public Advocate of the City of New York, who then wrote to Defendant's Executive Director of Human Resources, Howard Tames, asking him to review Plaintiff's complaint and take any possible measures to approve Plaintiff's accommodation request. *Id.* at ¶ 56(h). Becker responded, informing the Public Advocate that Plaintiff's application for a new license had been denied because of her prior unsatisfactory rating and termination, but her accommodation request would be addressed if Plaintiff obtained another license to teach. *Id.* at ¶¶ 56(i)–(j).

Plaintiff continued to work at the High School for Fashion Industries until June 2001. *Id.* at ¶ 57(a). In August 2001, Plaintiff declined an offer to continue teaching at the High School for Fashion Industries for the 2001–2002 school year because she could no longer use public transportation. *Id.* On July 22, 2002, Shelia Krentz, the coordinator in Region 2 of the OACE, interviewed Plaintiff for a fifteen hours per-week assignment with benefits. *Id.* ¶ 57(b). Plaintiff requested a classroom on the first floor, and Krentz told Plaintiff that the principal would have to approve the request. *Id.* On August 8, 2002, Plaintiff received a letter indicating that Region 2 did not have any fifteen hours per-week assignments for the Fall of 2002. *Id.* at ¶ 57(c).

On February 11, 2004, Plaintiff submitted a resume to Defendant's website but did not receive any response. *Id.* at ¶ 57(d). On March 20, 2004, Plaintiff interviewed with the New York Urban Teachers. *Id.* at ¶ 57(e). Four days later, Plaintiff learned that she was denied the job because she had received a prior unsatisfactory rating as a teacher. *Id.* On July 26, 2004, Plaintiff was denied consideration for the Call Back to Teaching Program because her prior service history included a "Probationary Discontinuance." *Id.*

On September 13, 2004, Judge Garaufis issued a Memorandum and Order in *Ayazi I,* granting in part and denying in part Defendant's motion for summary judgment. (Sept. 13, 2004 Memorandum & Order ("September 2004 Order").) After the September 2004 Order, Defendant invited Plaintiff to apply and interview for teaching positions. *Id.* at ¶ 59. In December 2004, Plaintiff reached out to three principals at elementary schools in Region 5. *Id.* at ¶ 59(a). She interviewed with one principal but was told that the school had no first floor and that the stairs were steep. *Id.* Plaintiff then called two other Region 5 schools and was told that neither one could accommodate her. *Id.*

Beginning in 2005 or 2006, Plaintiff was sent applications to attend recruitment events. *Id.* at ¶ 62. Each time that Plaintiff applied online, she was told that she could not interview, even though Defendant's policy is to allow all teachers in shortage areas, such as ESL, to interview at recruitment events. *Id.* In July 2005, Defendant switched to a paperless application system, and Defendant's website refused to allow Plaintiff to apply for positions. *Id.* at ¶ 60. Specifically, Plaintiff would receive an error message that said the system "cannot continue with application because of your prior service history with the Department." *Id.* at ¶ 60(a). At an unspecified time, Defendant's website began to accept Plaintiff's application, but she was informed that she could not interview for positions due to her past record. *Id.* at ¶ 61. On June

1, 2006, Plaintiff received an e-mail to register to attend a career fair. *Id.* at ¶ 61(a). Plaintiff received an admission ticket to the fair on June 6, but the next day received an e-mail from Defendant's Office of Recruitment informing Plaintiff that "they could not extend an invitation to attend this fair because [she has] been previously employed by the NYCDOE. Only those teachers who have not been or are not currently employed by the NYCDOE may attend the fairs." *Id.* at ¶ 61(c).

Plaintiff received another invitation to a recruitment event on November 14, 2006. *Id.* at ¶ 61(d). The event was for ESL-certified teachers. *Id.* Plaintiff was denied the right to attend the recruitment event, and the following month, on December 20, 2006, she filed an EEOC charge. *Id.* at ¶ 61(i). On February 12, 2007, Plaintiff was contacted regarding an opportunity to interview for ESL positions. *Id.* at ¶ 61(j). The invitation specified that it was only extended to candidates who are already certified or will be certified by September. *Id.* Plaintiff submitted a request for registration, and soon after she received an e-mail inviting her to the next phase of the recruitment process. *Id.* at ¶ 61(l). Plaintiff then completed a job application, which included a question regarding whether she had ever been discontinued from probationary service. *Id.* at ¶¶ 61(m)–(o). Plaintiff responded "yes" and provided information regarding her unsatisfactory service at Grover Cleveland. *Id.* at ¶ 61(o). Plaintiff received an e-mail response to her application inviting her to the next phase of the recruitment process. *Id.* at ¶ 61(q). Despite the fact that Defendant's policy stated that "applications from former employees will be reviewed," Plaintiff received a denial stating that she was ineligible because she was a former teacher. *Id.* at ¶ 61(s). Although Defendant only accepted online applications, Plaintiff was encouraged to submit paper applications and resumes directly to individual schools. *Id.* at ¶ 61(t).

Plaintiff alleges that Defendant has not invited her to attend any recruitment events, since she filed her December EEOC charge. *Id.* at ¶ 62. On January 8, 2008, Christine Kicinski, Assistant Deputy Counsel of Defendant's Office of Legal Services, wrote to the EEOC regarding Plaintiff's 2006 charge. *Id.* at ¶ 61(u). Kicinski stated that Plaintiff was denied interviews because, as a result "of her adverse service history (the 1997 discontinuance), any application [Plaintiff] submits is not processed but put on hold." *Id.*

## II.   Discussion

Defendant now moves to dismiss the Amended Complaint in its entirety, arguing that (1) Plaintiff's remaining claims are barred by the statute of limitations; (2) Plaintiff's Amended Complaint fails to state a claim regarding her allegation that Defendant retaliated against her by refusing to interview or to hire her; and (3) Plaintiff's NYSHRL and NYCHRL claims are barred by Plaintiff's failure to comply with the notice requirement set forth in Section 3813 of the New York Education Law and by the statute of limitations. (Def. Mem. 2.)

### a.   Standard of Review

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must "accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 320 (2d Cir. 2009)). Moreover, where a plaintiff is proceeding *pro se*, the court must read his or her pleadings "liberally and interpret them to raise the strongest arguments they suggest." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (citations omitted). A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson*, 631 F.3d at 63 (quoting *Iqbal*, 556 U.S. at 678). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### b. Statute of Limitations

Whether a claim is brought under Title I of the ADA or Section 1983, the claim accrues when the plaintiff "knew or had reason to know of the injury serving as the basis for his claim." *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999); *see also Singh v. Wells*, 445 F. App'x 373, 376 (2d Cir. 2011) ("Under the federal 'discovery' rule, a cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of his action." (citations and internal quotations omitted)). For claims brought under the ADA, the plaintiff has 300 days from the date of accrual to file a complaint with EEOC. *Williams v. N.Y.C. Housing Auth.*, 458 F.3d 67, 69–70 (2d Cir. 2006); *Harris*, 186 F.3d at 247. Plaintiff filed a complaint with the EEOC on December 20, 2006, (Am. Compl. Ex. B); therefore, any ADA claims that accrued prior to February 23, 2006 are time barred. For a New York-based Section 1983 claim, the plaintiff has three years from the date of accrual to file a complaint. *Washington v. County of Rockland*, 373 F.3d 310, 317 (2d Cir. 2004); *Harris*, 186 F.3d at 247–48. As a result, any due process claims that accrued prior to June 12, 2005 are time barred.[4]

---

[4] Plaintiff argues that Defendant is precluded from arguing that Plaintiff's claims are barred by the statute of limitations. (Pl. Opp'n 17.) At a November 29, 2011 pre-motion conference, Judge Garaufis ordered that Defendant is "not to move to dismiss any of Plaintiff's claims on the basis of exhaustion, which is not jurisdictional, and which the court waives." (Nov. 29, 2011, Minute Entry.) Although Judge Garaufis waived the exhaustion requirement, he

### c. Plaintiff's Federal Law Claims

#### i. Denial of Accommodation Requests

Plaintiff alleges that Defendant violated the ADA by failing to provide her with a reasonable accommodation at her hourly position at the High School for Fashion Industries. (Am. Compl. ¶ 66.) This claim is time barred. In June 1998, Plaintiff was working as a per-session teacher at Flushing Evening High School and the OACE. *Id.* at ¶ 54(b). Plaintiff filed an accommodation request in June 1998. *Id.* at ¶ 54(a). On September 14, 1998, Plaintiff began work as a per-session teacher at the High School for Fashion Industries. *Id.* at ¶ 54(h). That same day, Plaintiff's accommodation request was denied. *Id.* at ¶ 54(j). In April 1999, Plaintiff was denied an accommodation because adult education teaching was not considered a "regular job." *Id.* at ¶ 56(g). Plaintiff continued working at the High School for Fashion Industries until June 2001. *Id.* at ¶ 57(a). Plaintiff turned down the offer to teach at the High School for Fashion Industries for the 2001–2002 school year because she could no longer use public transportation. *Id.* In 2002, Plaintiff sought fifteen hours per-week assignments in Region 2 but was denied because the schools would not accommodate her disability. *Id.* at ¶¶ 57(b)–(c).

Plaintiff has not alleged any facts occurring after 2002 in connection with her claim that Defendant refused to provide her a reasonable accommodation as she sought hourly employment. Accordingly, Plaintiff's claim that Defendant violated the ADA by refusing her a reasonable accommodation is dismissed as time barred.[5]

---

did not waive the statute of limitations. To the contrary, Judge Garaufis' February 2011 Order allowed Plaintiff to amend the Complaint for the specific purpose of determining whether or not her claims are time barred. (February 2011 Order 23–24.)

[5] For the same reasons, Plaintiff's claim that Defendant retaliated against her by refusing to consider her accommodation request in her work as an adult education teacher is also dismissed as time barred.

### ii.  Placement of "DPD" on Plaintiff's License and Certificate Screens

Plaintiff alleges that Defendant violated the ADA and the Due Process Clause by placing adverse notations, specifically the notation "DPD," on her records thereby constructively revoking her teaching licenses. (Am. Compl. ¶¶ 70, 70(b).)  These claims are also time barred. Plaintiff was aware of the "DPD" notation by October 2005, when the license screens were provided to her pursuant to a court order in *Ayazi I.*[6] *Id.* at ¶ 46(b).  Moreover, Plaintiff alleges that on July 26, 2004, she was "denied consideration in the Call Back to Teaching Program because the program 'excludes any prior employees whose service history includes the reason listed below:  Probationary Discontinuance.'" *Id.* at ¶ 57(e).  Plaintiff further alleges that "DPD" means "Probationary Discontinuance" or discontinued while on probation.  *Id.* at ¶ 46(a). Plaintiff claims that, although she knew that "DPD" had been placed on her service history, she was not aware that it was placed on her license screens. (Pl. Opp'n 20–21.)  However, Plaintiff knew as of July 26, 2004 that "DPD" had been placed on at least some of her employment records, and this notation prevented her from being hired.  Based on these allegations, the Court finds that Plaintiff knew or should have known that "DPD" or "Probationary Discontinuance" had been placed on her license screens no later than July 26, 2004.  As a result, Plaintiff's claims that Defendant violated the ADA and Due Process Clause by placing the notation "DPD" on her records are dismissed as time barred.

---

[6] Defendant argues that, according to common sense, the notation must have been placed on the license screens when Plaintiff was discontinued from her probationary employment on June 26, 1997, and, therefore, Plaintiff's claim is time barred. (Def. Mem. 8.)  The issue, however, is not when the notation was placed on Plaintiff's records but when Plaintiff knew or should have known that the notation was on her records. *See Harris*, 186 F.3d at 247 (claim begins to accrue when the plaintiff "knew or had reason to know of the injury serving as the basis for his claim").

### iii.  Refusal to Interview or Hire Plaintiff

Plaintiff alleges that beginning in 2005 or 2006, she was invited to apply to attend recruitment events, but every time she applied, she was told that she could not interview for the positions. (Am. Compl. ¶ 62.)  Specifically, Plaintiff alleges that in June and November of 2006, Defendant sent Plaintiff invitations to recruiting events. *Id.* at ¶¶ 61(a), 61(d).  Plaintiff applied to attend the events, but Defendant informed Plaintiff that she was not allowed to attend the events. *Id.* at ¶¶ 61(c), 61(i).  On December 20, 2006, Plaintiff filed an EEOC charge, in which she alleged that Defendant violated the ADA by denying her the right to attend the recruiting events in June and November of that year. (Am. Compl. Ex. B ("December 2006 EEOC Charge").)  Since the filing of that charge, Plaintiff alleges that Defendant has not invited her to attend any recruiting events. (Am. Compl. ¶ 62.)  However, Plaintiff did receive an invitation to interview for a teaching position in February 12, 2007. *Id.* at ¶ 61(j).  Plaintiff completed the online job application, but she was told that she could not interview for the position because she was a former teacher. *Id.* at ¶ 61(s).

Defendant argues that Plaintiff's claim is time barred because its refusal to hire or interview Plaintiff is an effect of her discontinuance, not a new cause of action. (Def. Mem. 10.) Defendant's argument disregards the prior ruling of Judge Garaufis, finding that Plaintiff has alleged a claim that "Defendant's refusal to interview and to hire her was *independently* motivated by the intent to retaliate against her, in violation of the ADA." (February 2011 Order 23 (emphasis in original).)  Plaintiff alleges four instances of Defendant's refusal to hire or interview her that that occurred within the statute of limitations period: (1) Defendant refused to let Plaintiff attend a career fair on June 7, 2006, (Am. Compl. ¶ 61(c)); (2) Defendant refused to let Plaintiff attend a recruiting event in November of 2006, *id.* at ¶ 61(i); (3) Defendant stopped

12

inviting Plaintiff to attend any recruiting events after her December 2006 EEOC charge, *id.* at ¶ 62; and (4) Defendant refused to interview Plaintiff in February of 2007, *id.* at ¶¶ 61(m)–(s). Nevertheless, the Court finds that Plaintiff's claim must be dismissed for failure to state a plausible claim of retaliation.

In reviewing the sufficiency of Plaintiff's allegations, the Court must be "mindful of [its] duty to construe more liberally her *pro se* complaint." *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008). The ADA makes it unlawful for an employer to "discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). In order to establish a prima facie case of retaliation, the plaintiff must establish (1) participation in an activity protected by the ADA; (2) the defendant was aware of this activity; (3) an adverse employment action; and (4) a causal connection between the alleged adverse action and the protected activity. *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 608 (2d Cir. 2006); *see also Valtchev v. City of New York*, 400 F. App'x 586, 589 (2d Cir. 2010).

A plaintiff is not required to specifically plead every element of a prima facie case to survive a motion to dismiss. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) ("The prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement."); *Boykin*, 521 F.3d at 213 ("We have stated that the *Swierkiewicz* holding applies with equal force to any claim that the *McDonnell Douglas* framework covers." (citations, internal quotations and alterations omitted)). Still, a plaintiff must plead facts sufficient to render his or her retaliation claim facially plausible under *Twombly* and *Iqbal*. *Boykin*, 521 F.3d at 215–16 (finding the plaintiff had pleaded facts sufficient to state a claim where she "provided the date

13

and circumstances of the plaintiff's termination and alleged that employees of other nationalities were treated differently than plaintiff"). In order to plead a plausible claim of retaliation, Plaintiff must allege facts that could establish a causal connection between her protected activity and Defendant's refusal to interview or to hire her. *See Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012) (affirming the dismissal of the plaintiff's retaliation claim where the plaintiff had failed to allege facts that could support an inference of a causal connection); *Williams v. Time Warner Inc.*, No. 09 Civ. 2962, 2010 WL 846970, at *5–6 (S.D.N.Y. Mar. 3, 2010) (finding that where no inference of causation arises, the plaintiff's retaliation claims fail to meet the plausibility threshold). Here, Plaintiff has failed to allege any facts that could plausibly support an inference of causality.

Although temporal proximity of events can give rise to an inference of retaliation sufficient to establish causation, *Treglia v. Town of Manlius*, 313 F.3d 713, 720–21 (2d Cir. 2002), "the mere filing of such a complaint does not insulate an employee from subsequent discipline or discharge by his employer, nor create an automatic presumption that any subsequent employer action adverse to the employee is retaliatory in nature." *Spencer v. The Perrier Group of Am.*, No. 95 Civ. 8404, 1997 WL 282258, at *1 (S.D.N.Y. May 28, 1997). Where a plaintiff has repeatedly and continuously engaged in protected activity, the plaintiff must demonstrate a "nexus between a specific grievance and a specific adverse action" in order to find that proximity established causality. *Edwards v. Horn*, No. 10 Civ. 6194, 2012 WL 760172, at *17 (S.D.N.Y. Mar. 8, 2012); *see also Andino v. Fischer*, 698 F. Supp. 2d 362, 385 (S.D.N.Y. 2010) (finding that the temporal proximity was a result of the "large number of complaints in a short period of time" and did not establish a nexus).

Plaintiff alleges that Defendant's refusal to hire or interview her began no later than June 2006 when she was prevented from attending a career fair. (Am. Compl. ¶¶ 61(c), 62.) Prior to June 2006, Plaintiff had filed an EEOC charge in 1997, a federal lawsuit in 1998 and a number of requests for an accommodation — the most recent having occurred in 2002. Thus, Plaintiff's most recent protected activity occurred at least three years before the alleged retaliatory acts began.[7] Plaintiff does allege two instances of retaliatory conduct occurring after her December 2006 EEOC charge — Defendant's refusal to invite her to attend recruiting events in 2007 and Defendant's refusal to interview her in February 2007. (Am. Compl. ¶¶ 61(s), 62.) Despite the temporal proximity between these acts and Plaintiff's protected activity, Plaintiff's retaliation claim must fail. "Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001); *see also Nicastro v. N.Y.C. Dep't of Design and Const.*, 125 F. App'x 357, 358 (2d Cir. 2005) (finding the plaintiff had failed to establish a prima facie case of retaliation because the adverse employment actions had begun long before the plaintiff engaged in protected activity).

Plaintiff alleges that Defendant's refusal to hire or interview her began in 2005 or 2006. (Am. Compl. ¶ 62.) Thus, Defendant's failure to send her invitations to recruitment events in 2007 and to interview her in February 2007 is a "mere continuation of an adverse employment

---

[7] Although Plaintiff was prosecuting her claim in *Ayazi I* throughout this period, Plaintiff's continuous litigation cannot "insulate" her from any adverse employment action. *Spencer*, 1997 WL 282258, at *1. Plaintiff does not allege any facts that could support an inference that Defendant retaliated against her as a result of her ongoing federal lawsuit. In fact, Plaintiff alleges that after the September 2004 Order, granting in part and denying in part Defendant's motion for summary judgment, Defendant started inviting her to apply and interview for positions. *Id.* at ¶¶ 58–59.

condition initiated long before the protected activity in question [and] does not, without more, logically support an inference that the protected activity prompted retaliation." *Washington v. City of New York*, No. 05 Civ. 8884, 2009 WL 1585947, at *8 (S.D.N.Y. June 5, 2009); *see also Agard v. N.Y. State Dep't of Taxation and Finance*, No. 10 Civ. 4726, 2012 WL 601474, at *7–8 (E.D.N.Y. Feb. 23, 2012) (finding that the plaintiff had failed to adequately plead causation where the adverse action began prior to the filing of the EEOC charge); *Williams*, 2010 WL 846970, at *6 ("[T]he proximity between Plaintiff's complaint of stereotyping and her termination does not render a causal inference plausible, as Plaintiff began experiencing problems at work well before she ever engaged in protected activity."). Plaintiff has failed to allege any facts that support a causal connection between the adverse actions alleged and any protected activity. Accordingly, the Court finds that Plaintiff has failed to state a plausible claim for retaliation.

### d.  Plaintiff's State Law Claims

Finally, the Court dismisses Plaintiff's NYSHRL and NYCHRL claims as time-barred. In the February 2011 Order, Judge Garaufis stated:

> In her complaint, Ayazi alleges that Defendant's actions, in addition to violating the ADA, also violated New York State and City human rights laws. To the extent Ayazi successfully states a federal cause of action, such claims may be considered by the court under its supplemental jurisdiction. *See* 28 U.S.C. § 1367(a). However, Ayazi is advised that the statute of limitations for claims against a school district is one year. *See Amorosi v. South Colonie Independent Cent. School Dist.*, 9 N.Y.3d 367, 373 (2007). Furthermore, a plaintiffs filing of an EEOC complaint does not toll the running of the statute of limitations. *See Smith v. Tuckahoe Union Free School Dist.*, No. 03 CV 7951 (PGG), 2009 WL 3170302, at *11 n.9 (S.D.N.Y. 2009); *cf. Duran v. Jamaica Hosp.*, 216 F. Supp. 2d 63, 66–68 (E.D.N.Y. 2002) (in Title VII case, filing of EEOC complaint does not toll statute of limitations for supplemental state tort claim). Therefore, in *Ayazi II*, the court will only consider supplemental state or city claims that accrued after June 12, 2007.

(February 2011 Order 20 n.11.)  Plaintiff has failed to allege any claims that accrued after June

12, 2007.  Plaintiff's state law claims are dismissed.

## III.    Conclusion

For the reasons set forth above, Defendant's motion to dismiss the Amended Complaint

is granted.  The Clerk of Court is directed to close the case.


/SO ORDERED.

S/Judge Brodie

MARGO K. BRODIE
United States District Judge

Dated: September 28, 2012
         Brooklyn, New York